UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

KELLY MANN                                                                         PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:20-CV-267-LG-RPM

PELICIA HALL et al                                                              DEFENDANTS

## REPORT AND RECOMMENDATION

Plaintiff Kelly Mann, proceeding *pro se* and *in forma pauperis*, filed on August 18, 2020, a 42 U.S.C. § 1983 prisoner civil rights complaint asserting a wide variety of claims alleging unconstitutional conditions of confinement at the South Mississippi Correctional Institution (SMCI), where he is currently incarcerated. Plaintiff also asserts claims related to his parole eligibility. On August 8, 1993, Plaintiff pleaded guilty to murder and armed robbery. *See Mann v. State of Mississippi*, 167 So.3d 279, 279-80 (Miss.Ct.App. 2015). Plaintiff received a life sentence for the murder conviction and a 40-year sentence for the armed robbery conviction, with the armed robbery sentence to run consecutively to the life sentence. He is in the custody of the Mississippi Department of Corrections (MDOC) serving his sentence.

By previous orders, the Court dismissed and/or limited Plaintiff's claims so that only the following claims remain pending: (1) SMCI is overcrowded and does not provide adequate social distancing to combat COVID-19; (2) the commissary overcharges Plaintiff; (3) Plaintiff is subjected to unconstitutional general conditions of confinement from black mold, outdated lighting, hazardous cleaning chemicals, contaminated water, lead paint, outdated sprinkling system, mercury leaks, and electromagnetic radiation from microwave ovens and flat screen TVs; (4) Plaintiff has been denied access to courts; and (5) Plaintiff's parole has been unconstitutionally set off by one year. Doc. [28] [85]. The Court conducted a screening hearing

on June 13, 2022.  *See* Doc. [67].  Plaintiff testified extensively about each of his claims.  On

December 1, 2022, Defendants filed a motion for summary judgment.  Doc. [78].  Plaintiff has

not filed a response in opposition.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627

F.3d 134, 138 (5th Cir. 2010).  Where the summary judgment evidence establishes that one of

the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other

contested issues of fact are rendered immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations

of fact on a motion for summary judgment, the court must view the evidence submitted by the

parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175,

178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material

fact and the appropriateness of judgment as a matter of law to prevail on its motion.  *Union*

*Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this

by informing the court of the basis of its motion, and by identifying portions of the record which

highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.  "Rule 56

contemplates a shifting burden: the nonmovant is under no obligation to respond unless the

movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."

*John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985).  Once a properly supported motion

for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**<u>Overcrowding</u>**

Plaintiff argues that SMCI is overcrowded and does not provide adequate space for social distancing. This overcrowding places him in "grave danger" from possible exposure to COVID-19. The Fifth Circuit has determined that COVID-19 presents a severe risk of harm to prisoners, particularly prisoners whose age or underlying health condition renders them more susceptible to serious illness or death from the virus. *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) ("There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates."); *Marlowe v. LeBlanc*, 810 F. App'x 302, 305 (5th Cir. 2020) ("We do not question that COVID-19 presents a risk of serious harm to those confined in prisons, nor that Plaintiff, as a diabetic, is particularly vulnerable to the virus's effects."). Nevertheless, Plaintiff concedes that the risk from COVID-19 has dissipated. Doc. [67] at 67-70. Moreover, he testified that he has not been diagnosed with the illness while at SMCI. *Id.* at 69; *see Arnold v. St. Clair County Intervention Center*, No. 20-11410, 2020 WL 4700812 (E.D. Mich. Aug. 13, 2020) (dismissing as frivolous claim of inmate who had not contracted COVID-19 that defendants denied masks to inmates and prevented social distancing); *Boyce v. Harris Cty. Jail*, No. H-20-2971, 2020 WL 7024665, at *1 (S.D. Tex. Nov. 30, 2020). Although Plaintiff indicates that he has a fear of other future viruses, "[t]he incidence of diseases or infections, standing alone, do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine*, 956 F.3d at 801 (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009). Plaintiff's general fear of contracting an illness from some undetermined virus does not state a constitutional claim. *See*

3

*United States v. Koons*, 455 F.Supp. 3d 285, 292 (W.D. La. 2020); *VanDyke v. Louisiana Dep't of Corr.*, No. 20-0448, 2020 WL 1869016, at *2 (W.D. La. Apr. 13, 2020).  Based on the foregoing, Plaintiff has failed to state a claim regarding overcrowding.

**Commissary**

Plaintiff alleges that he is being overcharged for items at the commissary.  This claim is without merit.  The federal constitution does not require that inmates be provided with retail outlets in prison.  *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding 30 day loss of commissary privileges did not implicate due process); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Harrison v. Federal Bureau of Prisons*, 611 F.Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary.").  Likewise, inmates do not have a constitutional right to purchase commissary items at low prices.  *See French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."); *Pepper v. Carroll*, 423 F.Supp.2d 442, 449 (D.Del. 2006) (prisoner has no constitutionally protected right to purchase commissary items as cheaply as possible); *Armstrong v. Broadus*, No. 1:08CV225HSO-JMR, 2009 WL 3805552, at *9 (S.D. Miss. Nov. 6, 2009).  Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim with respect to the commissary.

**Exposure to Hazardous Substances**

Plaintiff alleges unconstitutional conditions of confinement.  Specifically, he complains of black mold; outdated lighting; exposure to electromagnetic radiation from microwave ovens and flat screen TVs; exposure to cleaning chemicals, lead paint, and mercury; and contaminated

water.  At the screening hearing he elaborated that "the combustion of this all coming together" is "creating deadly components."  Doc. [67] at 51-52.

The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care.  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (holding that the inmate must show that the risk of which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk").  In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, i.e., an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind.  *Herman*, 238 F.3d at 664.  The required state of mind is one of deliberate indifference to inmate health or safety.  *Id.*  Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed.  *Id.*  Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant.  *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003).

5

Plaintiff does not allege that he has been denied "the minimal civilized measure of life's necessities." Rather, he complains of a constellation of environmental hazards to which he has been exposed and which may have caused him some harm. With regard to mold, he testified that it is everywhere in the prison but especially in the shower area. He conceded that the prison "periodically" pressure washes the shower areas. Doc. [67] at 54. He also admitted that inmates are provided cleaning supplies on an almost daily basis. *Ibid.* Based on Plaintiff's testimony, prison officials have not been deliberately indifferent to the mold issues at SMCI.

Although Plaintiff asserts that the water at SMCI is contaminated, his allegation is purely speculative. When asked what the water is contaminated with, Plaintiff responded "it's hard to determine" because he has not been provided the water testing data. Doc. [67] at 37-38. He pointed out that he filed a motion for electronic surveillance so the Court could view the testing process. *Id.* at 37. Plaintiff alluded to inmate Otis Moore who allegedly had three or four inches of his intestine removed because of consuming the water at SMCI. *Ibid.* Plaintiff further speculates that he has "skin lasers" and an overactive bladder from the water, but he has provided no medical evidence or diagnosis to substantiate this claim.. *Id.* at 39-40. As evidence that the water is contaminated, Plaintiff alleges that the water inspector does not wear gloves when testing the water and does not have a "valve" or proper equipment to test the water for "mercury, zinc, or any contaminant in the water." *Id.* at 37, 42-43. He asserts that the testing is "just a show, a put-on … to defraud the government out of more money." *Id.* at 40. Plaintiff's speculative and conclusory allegations about contaminated water and any resulting injuries fail to state a claim. *See e.g. Lee v. Davis*, No. 6:21cv147, 2021 WL 4185881, at *3 (E.D.Tex. Aug. 9, 2021) (finding no factual basis for plaintiff's suggestion that his H. pylori infection was caused by contaminated drinking water); *Taylor v. Bird*, No. 2:20-cv-2007 JAM DBP, 2021 WL

4751270, at *2 (E.D.Calif. Oct. 12, 2021) ("[u]nfounded speculation that plaintiff's renal failure was caused by contaminated water is not enough on its own to state a claim."); *Moore v. Goings*, No. 1:09CV587, 2011 WL 3328685, at *2 (E.D.Tex. Apr. 22, 2011) (dismissing as conclusory plaintiffs allegations that contaminated water may have exposed inmates to environmental hazards and toxic materials); *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, *2 n.1 (E.D. Mich. Apr. 21, 2014) (dismissing an inmate's claim as frivolous where her allegations of contaminated water were conclusory and she failed to "set forth any specifics, such as ... why she believe[d] the drinking water was contaminated").

When questioned about injuries from exposure to the various environmental hazards, Plaintiff responded that the "cumulative effect" of the black mold, outdated lighting, flat screen TVs, microwave ovens, outdated sprinkler system, etc. is subjecting him to electromagnetic radiation.  Doc. [67] at 50-51.  He testified that "[t]he combustion of this all coming together along with the chemicals, the radiation that comes from the flat-screen TVs, the microwave ovens, and this and that … it's creating deadly components."[1]  *Id.* at 51-52.  Plaintiff further explained he knows he has been injured because "I could go out in the sun today.  If I stay out there more than 15 or 20 minutes … I'm going to come down with a fainting scenario.  I may faint." *Id.* at 53.  The radiation "has created another way of functioning … for my body." *Ibid.* According to Plaintiff, "I got melan in my skin, so the sun, it's supposed to create vitamins and things … for my body.  But now it's not doing it.  It's doing vice versa.  It's causing me harm to where now, when I'm in the midst of it, I am fainting." *Ibid.*  Plaintiff further elaborated that "being in this environment, locked in all the time, not being able to have my feet to hit natural

---

[1] Although Plaintiff contends that flat-screen TVs subject him to dangerous electromagnetic radiation, he simultaneously complains that the commissary charges too much for these same TVs.  According to Plaintiff, a small flat-screen TV costs over $300 at the commissary, but he believes it should only cost about $99.  Doc. [67] at 63-64.

ground, I don't even know if my body has the one-percent electricity that it needs to operate off of now because my feet very seldom hits [sic] the natural ground." *Ibid.*

With regard to his injuries, Plaintiff offers nothing more than self-diagnosis without any supporting medical evidence. His alleged injury of feeling faint is *de minimis* and does not rise to the level of a constitutional injury. Courts who have examined claims of mold exposure and generalized injuries in prison settings such as alleged here by Plaintiff, have found these and similar maladies insufficient to support an Eighth Amendment conditions of confinement claim for purposes of 42 U.S.C. § 1997e(e). *See Walston v. State Counsel for Offenders*, No. H-07-2120, 2010 WL 3056657, at *5 (S.D. Tex. July 30, 2010) (collecting cases). Injuries from rashes and skin conditions are considered *de minimis*. *See Smith v. Banks*, 2019 WL 5699624, at *4 (S.D.Miss. June 7, 2019) (collecting cases). Likewise, Plaintiff's allegation of injuries from exposure to dangerous electromagnetic radiation and the cumulative effect of environmental conditions at SMCI fails to state a claim. *See Williams v. Cabrera*, No. 2:10CV00034 ERW, 2011 WL 2462031, at *3 (E.D. Mo. June 17, 2011); *Johnson v. Harris County Probation Dep't*, No. H-09-3846, 2009 WL 4801422, at *1-2 (S.D. Tex. Dec. 11, 2009). His allegations lack any basis in fact; his injuries and their causation are purely speculative. *See Clarke v. Collins*, 5 F.3d 1494 (5th Cir. 1993) (rejecting, as speculative, an inmate's claim that he was "exposed to the AIDS virus and other diseases in the common showers."); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir.1994) (prisoner's self-diagnosis alone will not support a medical conclusion). Although he purportedly designated experts in the fields of harmful food ingredients and electromagnetic radiation, he has not designated any medical causation experts diagnosing medical conditions caused by the electromagnetic radiation and other environmental hazards. *See McGill v. BP Expl. & Prod., Inc.*, No. 19-60849, 2020 WL 6038677, at *3 (5th Cir. Oct. 12, 2020); *Williams v.*

*BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *11 (E.D.La. Dec. 5, 2019) ("[w]hen

a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the

plaintiff's suit may be dismissed at the summary judgment stage."). Based on the foregoing,

plaintiff's claims should be dismissed.

**Access to Courts**

Plaintiff alleges that he has been denied adequate legal research. Prisoners have a

constitutional right to meaningful access to the courts through adequate law libraries or

assistance from legally trained personnel. *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir.

1998). This constitutional guarantee does not afford prisoners unlimited access to prison law

libraries. *Id.* Before a prisoner may prevail on a claim that his constitutional right of access to

the court was violated, he must demonstrate that his position as a litigant was prejudiced by his

denial of access to the courts. *Id.* at 230-31.

At the screening hearing, Plaintiff stated that he is able to go to the law library once a

week. Doc. [67] at 8, 44. If he provides case citations to the Inmate Legal Assistance Program

(ILAP), ILAP will give him cases. *Id.* at 45. Accordingly, Plaintiff's testimony demonstrates

that he does have access to legal research. However, Plaintiff complains that the ILAP

department did not provide him with adequate legal research. Specifically, he alleges that the

prison law library workers were unable to find the case of "*Hood versus Epps*, decided January

of 2019." *Id.* at 46. According to Plaintiff, the *Hood* case identified crimes against prisoners;

and if he had been given a copy of this case "those issues could have been preserved." *Id.* at 45-

46. Plaintiff does not explain with any specificity how this particular case would have aided his

litigation efforts or how it relates to the claims asserted in his complaint. Other than his vague

and conclusory argument, Plaintiff has failed to identify any prejudicial effect resulting from

ILAP not giving him a copy of "*Hood versus Epps*."  Thus, he fails to state a constitutional claim for denial of access to courts.

Plaintiff also alleges that ILAP prevented him from attending his parents' funerals. According to Plaintiff, he submitted grievances through SMCI's Administrative Remedies Program, but these grievances went unanswered.  Plaintiff possesses no constitutional right to attend his parents' funerals.  *See Alphonse v. Louisiana Dep't of Public Safety*, No. 18-6133, 2018 WL 3979854, at *5 (E.D. La. July 31, 2018) ("an inmate clearly has no federal statutory or constitutional right to attend a relative's funeral"); *Colon v. Sullivan*, 681 F.Supp. 222, 223 (S.D.N.Y. 1988) (holding that denying a prisoner the opportunity to attend a relative's funeral does not violate a constitutionally protected liberty interest).  Whether he could or could not attend his parents' funerals does not constitute an access-to-courts claim.  Moreover, Plaintiff possesses no constitutional right to have grievances investigated or resolved in his favor.  *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005).  His argument is frivolous.

**Parole Eligibility**

Plaintiff alleges that his parole eligibility was unconstitutionally set off by one year. According to Plaintiff, the MDOC Records Department committed fraud against him.  He informed the parole board of the fraud, but the parole board failed to investigate the matter or consult the sentencing court for clarity regarding Plaintiff's convictions.  As a result of the fraud, he alleges that is under a more severe sentence.  At the screening hearing, in an effort to gain some clarity, the undersigned questioned Plaintiff about this claim.  Plaintiff's testimony was largely incoherent.  For example, he testified "by [MDOC] flipping my sentences and putting the armed robbery at the top and the murder charge at the bottom, that places me in the more severe situation of doing time, of which that gives them the opportunity to go back to the life sentence."

Doc. [67] at 21.  He further testified about a vast conspiracy and criminal conduct involving

members of the parole board and other state officials; *Id.* at 23-28, however, he fails to link this

criminal activity to the alleged resentencing of Plaintiff by the MDOC Records Department.

As an initial matter, Plaintiff admits that the alleged misconduct occurred on January 6,

2015.  He further admits that he is not aware of any actions that occurred from 2016 to the

present related to his parole-eligibility claim.  By order of September 17, 2021, U.S. District

Judge Louis Guirola, Jr. found that portions of Plaintiff's claims regarding parole eligibility and

illegal sentencing were either time-barred or barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Doc. [28] at 6, 8-9.

At least in part, Plaintiff's complaint relates to parole-eligibility procedures.  As a general

matter, prisoners who seek review of the procedures used to determine parole eligibility, may do

so through a civil rights complaint filed pursuant to § 1983, because success would not

necessarily translate into an immediate release or even a shorter stay in prison and, at most

would provide the prisoner with a new determination of whether he is eligible for parole

consideration.  *See Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005).  However, the Mississippi

parole statute does not create a constitutionally protected liberty interest.  *See Hunter v. Murphy*,

990 F.2d 627 (5th Cir. 1993) (citing *Scales v. Mississippi State Parole Bd.*, 831 F.2d 565 (5th

Cir. 1987) and *Harden v. State of Mississippi*, 547 So.2d 1150 (Miss.1989)).  Furthermore,

allegations that the parole board considered "unreliable or even false information in making

parole determinations, without more, simply do not assert a federal constitutional violation."

*Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *McNabb v. Washington*, No. 5:09cv26-

MTP, 2010 WL 376823, at *2 (S.D.Miss. Jan. 25, 2010). *See also Palmer v. Wyeth*, 163 F.3d

1354, 1997 WL 857388, at *1 (5th Cir. Nov. 9, 1998) (lawsuit against board member alleging

that the member had placed false information into the plaintiff's parole file, dismissed on the

basis that no liberty interest existed in release on parole).

Plaintiff has failed to state a coherent claim regarding parole eligibility.[2]  He appears to

allege an error on the part of the MDOC Records Department.  He asserts that MDOC

"resentenced" him.  The resentencing "order" he provided to the Court in support of this claim

was nothing more than Plaintiff's sentence computation record from the MDOC.  Doc. [1-1] at

12; [67] at 21-22.  At the screening hearing, Plaintiff admitted that he has been parole eligible

since 2012; but he has been denied parole every year.  Doc. [67] at 30.  Ultimately, it appears

Plaintiff is merely unhappy with the fact that he has been denied parole, which does not

constitute a viable claim under § 1983.  *See Greenholtz v. Inmates of Nebraska Penal and Corr.*

*Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted

person to be conditionally released before the expiration of a valid sentence."); *Irving v. Thigpen*,

732 F.2d 1215, 1217-18 (5th Cir. 1984).[3]

**Defendants' Motion to Strike**

Defendants have filed a motion to strike Plaintiff's expert designation.  Doc. [77].  The

Court established a deadline of August 1, 2022, for Plaintiff to designate experts.  Doc. [57].  In

a letter dated August 3, 2022, and filed with the Court on August 9, 2022, Plaintiff submitted a

one-page pleading purporting to designate as experts (1) Dr. Ridgely Abdul Mu'min

---

[2] For instance, Plaintiff at one point testified "And as you know, there may have been a probability, you understand me, that the Queen of England may not have approved my bond, it being old as it is."  Doc. [67] at 33.

[3] At one point, Plaintiff also argued that he "should have been released from prison … some nine or ten months ago."  Doc. [67] at 31.  To put it mildly, Plaintiff's logic and mathematical computations are difficult to understand. *See id.* at 17-21, 31-34.  For example, he testified he would have been released already, "if I flat-timed.  But if my earned time is given to me, of which if that 20 years earned time that was taken, if it's applied to the remaining 30, it will eat up—it will eat it up because it only takes 15 years under the law that I was currently convicted under in 1993, 15 years to flatten a 30-year with parole." *Id.* at 31.  Regardless, to the extent Plaintiff argues he is entitled to immediate release, such a claim should be raised in a habeas petition rather than in a § 1983 civil rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997).

Muhammad, who would testify regarding harmful ingredients, specifically aspartame, served in the food at SMCI; and (2) Dr. Sheila Reavill, an expert in electromagnetic radiation exposure. Doc. [68]. Defendants argue that Plaintiff's designation is untimely; and it is deficient because Plaintiff has failed to submit signed, written reports from the experts. Moreover, the designation does not fully disclose the subject matter, facts, and opinions to which each expert would testify, or the grounds of those opinions. Plaintiff provided names and addresses for the two individuals but nothing more.

The undersigned finds that Plaintiff's designation fails to conform with the requirements of Fed. R. Civ. P. 26(a)(2)(B) and L.U.Civ.R. 26(a)(2)(A). Plaintiff has not filed a response in opposition and does not dispute Defendants' contention about the inadequacy of his expert designations. *See* L.U.Civ.R. 7(b)(3)(E). The undersigned recommends that Defendants' motion to strike be granted.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendants' [78] motion be GRANTED, and that all the claims in Plaintiff's 42 U.S.C. § 1983 complaint be dismissed as frivolous or for failure to state a claim. It is also recommended that Defendants' [77] motion to strike be GRANTED. The undersigned further recommends that Plaintiff be assessed a strike. *See Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007). Plaintiff already has accumulated two strikes, *see Mann v. Cabana*, 202 F.App'x 787 (5th Cir. 2006); therefore, the dismissal of the instant complaint for failure to state a claim would be his third strike as contemplated by 28 U.S.C. § 1915(g). Accordingly, the undersigned recommends that Plaintiff be barred from proceeding *in forma pauperis* in any future civil action or appeal unless he is under imminent danger of serious physical injury. *See Banos v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1997).

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 26th day of July 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE